UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FARAH MELKI AMID,

                Plaintiff,

    -against-

VILLAGE OF OLD BROOKVILLE,
INCORPORATED VILLAGE OF OLD
BROOKVILLE, RICHARD SHAPER,
JOHN CHASE, MATT MOED, ROGER
COCCHI, HARVEY MARX, LUDMILA
STANCO, HENRY FOSTER, PAULA
GONTHIER (sued in their individual and
official capacities), SYDNEY B. BOWNE
& SON LLP, ROBERT WHITING (sued
in his individual and official capacities),
THE PLANNING BOARD OF THE
INCORPORATED VILLAGE OF OLD
BROOKVILLE, NANCY MARX, and the
ARCHITECTURAL REVIEW BOARD OF
THE INCORPORATED VILLAGE OF
OLD BROOKVILLE,

                Defendants.
----------------------------------------------------------------X

MEMORANDUM AND ORDER

CV 11-3800

(Wexler, J.)



FILED
IN CLERK'S OFFICE
DISTRICT COURT E D N Y

★  FEB 07 2013  ★

**LONG ISLAND OFFICE**

      LAW OFFICE OF ROBERT J. DEL COL
      BY: ROBERT J. DEL COL, ESQ.
      Attorney for Plaintiff
      1030 West Jericho Turnpike
      Smithtown, New York 11787

      SOKOLOFF STERN, LLP
      BY: MARK RADI, ESQ.
      Attorneys for Defendants
      179 Westbury Avenue
      Carle Place, New York 11514

WEXLER, District Judge

      Plaintiff Farah Melki Amid ("Plaintiff" or "Amid"), a homeowner in the Village of Old

1

Brookville (the "Village") alleges that actions taken by Defendants in connection with the construction of Plaintiff's home violated her Constitutionally protected civil rights. Named as Defendants are the Village and several individuals, including Plaintiff's neighbors, most of whom appear to be members of the Village Planning Board (the "Planning Board") or its Architectural Board of Review (the "ABR"). Plaintiff also names the Planning Board and the ABR as Defendants.[1]

Plaintiff's Amended Complaint (hereinafter "Complaint") sets forth federal causes of action pursuant to 42 U.S.C. §§1983 and 1985, as well as claims alleging abuse of process, prima facie tort, "selective enforcement," "selective prosecution," and fraud. Presently before the court is Defendants' motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a claim. In response to Defendants' motion to dismiss, Plaintiff's memoranda of law asserts that Amid withdraws "any and all causes of action sounding in 42 U.S.C. §1983 (Prima Facie Tort and Fraud)." Thus, before the court is the motion to dismiss any causes of action that remain.

## BACKGROUND

I.  <u>The Parties and the Factual Allegations of the Complaint</u>

As noted, Plaintiff was, at relevant times, a homeowner in the Village. Defendants are the Village, the Planning Board and ABR, as well as individuals alleged to be Plaintiff's neighbors and/or members of the named boards. Plaintiff describes herself as a single mother who is a naturalized United States citizen of Iranian descent, and a "non-practicing member of

---

[1] Plaintiff has discontinued this action as against five previously named individuals, the Village Board of Trustees and a law firm. The caption in this Memorandum and Order reflects the identity of the Defendants that remain.

2

the Islamic faith."

The Complaint, which spans 61 pages and 539 paragraphs, chronicles events surrounding the ownership and renovation of Plaintiff's home (the "House"). The House was purchased by Plaintiff and her husband in 1991. After a 1999 divorce, Plaintiff was approached by her neighbor, real estate agent Defendant Harvey Marx, who expressed an interest in purchasing or listing the House for sale. Marx is alleged to have been unwilling to take no for an answer, and he and his wife are alleged to have thereafter begun an aggressive years-long campaign to drive Plaintiff out of the neighborhood. As part of that campaign, the Marxes are alleged to have repeatedly deposited plastic bags of their dog's excrement onto Plaintiff's property. In addition, on at least two occasions between 2007 and 2008, Marx is alleged to have encountered Plaintiff on the street and to have accelerated his car as if he were intent on running her down.

Plaintiff alleges that a landscaper working for Defendant Foster (also a neighbor) improperly placed piles of fallen leaves from the Foster property on the boundary with Amid's property. In the fall of 2003, Plaintiff and Foster had a verbal altercation, followed by Foster pushing and shoving Plaintiff, calling her "trash," and suggesting that she leave the Village and relocate to a "ghetto" where such "trash" belongs. Following this incident, Plaintiff filed a complaint with the Village police department and thereafter obtained a "stay away" order of protection as to Foster.

Plaintiff states that in 2003 she applied, but was denied permission by the Village to remove a tree from her property. In 2004, that tree fell on Plaintiff's property during a wind storm, causing substantial damage. The damage is alleged to have led to the growth of black mold which rendered the House uninhabitable. Plaintiff decided to rebuild. In 2005, a

3

construction permit was approved and Plaintiff began construction of her new home. In 2006, Defendant Village Building Inspector Moed is alleged to have negligently inspected the House. That negligent inspection is alleged to have allowed the House to thereafter be constructed in a structurally unsound manner.

The majority of the factual allegations in the Complaint relate to events that transpired in connection with Plaintiff's 2007- 2009 attempts to seek approval of her plans to build a cellar and a cabana, as well as approval of a landscape lighting plan. Plaintiff alleges a variety of circumstances that are stated to constitute personal harassment and to have resulted the undue delay of her project. Certain of those circumstances are nowhere attributed directly to Defendants' conduct. Those acts include several instances of alleged vandalism, including the spray-painting of racial epithets on her property. Amid also alleges defective construction by a framing contractor. The acts that the Complaint attributes to some or all of the Defendants include:

- the requirement that Plaintiff pay excessive application and review fees in connection with her proposed plans;

- the requirement that Plaintiff tag all existing trees on her property and apply for permission for their removal;

- defendant/neighbor Gonthier's objection to Plaintiff's landscape lighting as offensive, followed by the allegedly unreasonable disapproval of her landscape lighting design (when other neighbors had similarly bright designs);

- the 2008 requirement that Plaintiff remove a fleur de lis design from her front gate on the ground that the design was inconsistent with the character of the Village, and

4

- the requirement that Plaintiff attend numerous hearings before the Planning Board between February and April of 2008 to discuss her tree planting plan.

In addition to the facts referred to above, Plaintiff's complaint refers to the Village's allegedly harassing decision to place a stop sign (which was later removed) directly in the middle of her driveway entrance. Plaintiff and the Village also appear to have had disagreements concerning the proper drainage in the area where Plaintiff's property meets that of the Village. That disagreement culminated in the 2010 commencement of a lawsuit in New York State court. Specifically, in August of 2010, the Village commenced an action against Plaintiff seeking recoupment of costs alleged to be associated with the role played by Plaintiff's landscaping in connection with flooding on a Village road.

Despite all of the allegations above, certain matters are clear. First, as noted, Plaintiff's original building permit was approved in 2005. After the conclusion of hearings, the Planning Board approved Plaintiff's planting plan in June of 2008, and a later site plan was approved in November of 2008. Plaintiff has yet to receive a final decision as to her requests for certificates of occupancy for the House or her cabana.

As noted, the Complaint asserts Plaintiff's ethnic and religious identities. The lone factual allegation regarding race is not a reference to Plaintiff. Instead, the Complaint states that in or around September 17, 2007, "a Muslim woman of Iranian national origin in neighboring Locust Valley was savagely beaten and slashed." There is no connection stated between the Village, or any individual Defendant and the attacked woman. Nor is there any connection alleged to exist between the attacked woman and Plaintiff.

Plaintiff alleges that the delay in construction of the House required her to seek extension

5

of her construction loans and caused her thousands of dollars in excessive fees, as well as millions of dollars in damages. She alleges that her neighbors were using their political influence in the Village, and in particular with the ABR, against her. She also alleges that the lawsuit commenced by the Village in State Court is a part of the "financial war" waged against Plaintiff, aimed at destroying her financially so as to drive her out of the Village.

Ultimately, Plaintiff states that she was unable to maintain the financial burden of the House. In November of 2009, she listed the House for sale for $11.5 million. Defendant Chase is alleged to have proposed that Plaintiff purchase his home, and that he would purchase the House. Plaintiff states that when she refused to swap her $11.5 million home for the $3 million Chase house, Chase told Amid that if she returned to the Village after selling the House, Chase's friend the Village police chief would make things "very difficult and complicated for her."

II. The Claims

Plaintiff's first claim alleges a violation of Section 1983 in that Plaintiff was deprived of her right to Equal Protection of the Law. Specifically, Plaintiff claims that she was treated differently from similarly situated property owners. She states that requirements with respect to the lighting and landscape design were not placed upon similarly situated homeowners. Amid alleges that such selective treatment was made in bad faith and with the intent to punish Plaintiff for exercising her Constitutionally protected right to build on her property, and in furtherance of the personal animosity of her neighbors, Defendants Marx, Foster and Gonthier.

Plaintiff claims that she was treated differently from similarly situated homeowners and that her treatment by the Planning Board was "wholly irrational and arbitrary." That difference is alleged to be based upon Plaintiff's gender, marital status and race. As to any particular

6

difference in treatment, Plaintiff refers specifically to sixteen homes in Old Brookville that were not subject to the same regulations as she with regard to landscape lighting. These houses are alleged to be similarly situated to the House and to have been allowed lighting that produced more lumens that those used in Plaintiff's proposed landscape lighting plan.

Plaintiff's second claim alleges a violation of Section 1985. This claim alleges that Defendants conspired unlawfully to impose onerous financial burdens on Plaintiff and caused her to default on her construction loans. The conspiracy is alleged to have been part of a financial war, motivated by discriminatory animus toward Plaintiff based upon her national origin, family status, religion, and her prior dealings with Defendants Foster, Marx, and Gonthier. The Section 1985 claim alleges further that the Planning Board and the ABR selectively imposed and enforced onerous restrictions and fees on Plaintiff, and that Defendants Chase and Cocchi received direct financial benefits as a result of such fees.[2]

III.   The Motion to Dismiss

Defendants move to dismiss all of Plaintiff's claims in their entirety. First, Defendants point out that the majority of the factual allegations in the Complaint occurred beyond the applicable three year statute of limitations and any claim arising from those facts is therefore time-barred. To the extent that Plaintiff's claims are based upon the denial of certificates of occupancy, such claims are argued to be premature as there has been no denial of those certificates, and, indeed no final decision with respect thereto has been rendered.

Aside from issues of timeliness, Defendants seek dismissal of Plaintiff's claims on the

---

[2] Plaintiff's third through seventh causes of action are state law claims that have been abandoned by Plaintiff as a result of the pending motion

merits. Specifically, it is argued that Plaintiff's abandonment of any claim pursuant to Section 1983 requires dismissal of any Section 1985 claim which would be dependent upon the now-abandoned claim under Section 1983. To the extent that Plaintiff's statement as to abandonment of certain claims was not meant to disclaim a Section 1983 equal protection claim, any such claim is argued to be nonetheless subject to dismissal on the ground that there is neither evidence: (1) that Amid was treated differently from any similarly situated property owner, nor (2) that any such treatment was based upon any impermissible consideration, including malicious or bad faith intent to injure. Dismissal of this substantive Section 1983 claim would require dismissal of the conspiracy claim alleged pursuant to Section 1985.

## DISCUSSION

### I. Standards on Motion to Dismiss

In considering a motion to dismiss made pursuant to Rule 12(b)(6), the court must accept the factual allegations in the complaints as true, and draw all reasonable inferences in favor of plaintiffs. Bold Electric, Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court rejected the standard set forth in Conley v. Gibson, 355 U.S. 41 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," id. at 45-46. The Supreme Court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Twombly, 550 U.S. at 570; see also Ashcroft v. Iqbal, 556 U.S. 662 (2009). Although heightened factual pleading is not the new standard, Twombley holds that a "formulaic recitation of cause of action's elements will not do. Factual allegations must be

8

enough to raise a right to relief above the speculative level." Id. at 678. Further, a pleading that does nothing more than recite bare legal conclusions is insufficient to "unlock the doors of discovery." Iqbal, 556 U.S. at 678.

II.     Timeliness of Plaintiff's Claims

Plaintiff's civil rights claims are governed by a three year statute of limitations. Munsch v. Evans, 2012 WL 528135 *11-12 (E.D.N.Y. 2012). A civil rights claim is deemed to accrue when the plaintiff "knows or has reason to know of the injury which is the basis of his action." Id., quoting, Singleton v. City of New York, 632 F.2d 185, 191 (2d Cir.1980); see also Hampton Bays Connections, Inc. v. Duffy, 212 F.R.D. 119, 124 (E.D.N.Y. 2003).

The Complaint alleges the wrongful nature of a series of discrete decisions made with respect to the House. Plaintiff complains of actions taken as far back as 2003, when she was denied permission to remove a tree from her property, to the 2007-2009 decisions made with respect to Plaintiff's cabana, lighting and landscaping plans. In an effort to render all allegations in the Complaint timely, Plaintiff attempts to integrate these different actions into a single "continuing violation" of her civil rights. In the court's view, however, Plaintiff does not allege a series of events that, taken together, amount to a single and unified Constitutional violation. To the contrary, Plaintiff alleges that each act amounted to disparate treatment motivated by an improper motive. Under such circumstances, the continuing violation doctrine has no application. See Munsch, 2012 WL 528135 *13. Therefore, the court holds that any claim raised in excess of the three year period prior to the Complaint herein is time-barred.[3] The court turns then to

---

[3]     Certain time-barred facts also fail to state a claim because they refer only to the granting of certain requests. For example, the granting of Plaintiff's 2005 building permit negates any claim arising out of that early application.

9

consider whether any timely claim survives this motion.

III.  Section 1985

    A.  Stating a Claim

To state a cause of action under Section 1985, a plaintiff must allege: "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." Fishman v. County of Nassau, 2011 WL 3919713 *8 (E.D.N.Y. 2011), quoting, Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999). A Section 1985 conspiracy must be shown to have been motivated by racial or otherwise class-based, invidious discriminatory animus. Estes-El v. Dumoulin, 2012 WL 1340805 *6 (E.D.N.Y. 2012); see United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829 (1983). Importantly, in the absence of a valid claim stated pursuant to Section 1983, there can be no claim pursuant to Section 1985. Fishman, 2011 WL 3919713 *8.

    B.  The Section 1985 Claim is Dismissed

The papers submitted by Plaintiff in response to Defendants' motion appear to abandon all claims pursuant to Section 1983. Thus, as noted, Plaintiff states that she withdraws "any and all causes of action sounding in 42 U.S.C. §1983 (Prima Facie Tort and Fraud)." A plain reading of this sentence leads the court to conclude that Plaintiff has declined to pursue any claim pursuant to Section 1983, in favor of the sole remaining claim under Section 1985.

Plaintiff's decision to abandon her Section 1983 claim requires dismissal of any claim pursuant to Section 1985. This is because, as noted above, there can be no claim for conspiracy

10

in the absence of a valid claim for the deprivation of civil rights pursuant to Section 1983.

Even if Plaintiff intended no abandonment of her Section 1983 claim for equal protection, her Section 1985 claim would nonetheless fail because Amid makes no plausible claim that any action by any Defendant was motivated by racial or class-based animus. Apart from Plaintiff's statement as to her ethnicity and her status as a "non-practicing member of the Islamic faith," there is no evidence of any discriminatory action by any Defendant. To be sure, Plaintiff makes claims of acts of vandalism, and the attack of a woman in a nearby village. It is not plausible, however, to attribute such acts to any Defendant herein in furtherance of a Section 1985 claim of conspiracy. Accordingly, Plaintiff's Section 1985 claim fails not only for failing to allege a substantive Section 1983 claim, but also for the lack of any showing of discriminatory or class-based animus.

III. Section 1983

Amid's Memorandum of Law continues to argue that she was subject to selective enforcement of the Village laws in violation of her right to Equal Protection as guaranteed by the Fourteenth Amendment to the Constitution. To the extent that Plaintiff continues to make any such claim, however, that claim fails.

The Equal Protection Clause of the Fourteenth Amendment is essentially a direction that all those similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439 (1985). A plaintiff claiming a violation of such rights may claim either that he was subject to selective enforcement, or treated differently based upon a "class of one" theory. Where, as here, plaintiff argues a violation of equal protection based on selective enforcement, she must show that compared with others similarly situated, she was selectively treated, and that

11

such treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 16 (2d Cir. 1999); Viteritti v. Incorporated Village of Bayville, 2013 WL 145811 *8 (E.D.N.Y. 2013).

It has been recognized that the "formulation" for determining similarity varies depending upon the nature of the plaintiff's claim. Indeed, certain courts have held that a less stringent standard of "similarly situated in all material respects" applies to claims alleging selective enforcement, while a class of one claim requires alleging a higher level of similarity. Viteritti, 2013 WL 145811 * 8 (noting that class of one claim requires a showing that no rational person could regard the circumstances of the plaintiff as different from a comparator, while a selective enforcement claim requires only a showing of substantial similarity in all material respects).

Whatever Plaintiff's theory, Iqbal requires more than a general pleading of treatment different from those similarly situated. See Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010). Instead, facts must be pled to make plausible the allegation of disparate mistreatment. Thus, where a plaintiff claims to have been treated unfairly in a zoning/building context, he must plead specific examples of applications and hearings that were similar to plaintiff's application and demonstrative of the disparate treatment alleged. Id.

Whatever level of similarity applied, Plaintiff's Complaint (despite the fact that it has already been amended) fails completely to plead the requisite existence of similar homeowners subject to treatment more favorable than that received by Plaintiff. Despite the fact-intensive nature of the Complaint, there is no real pleading of any similarly situated comparator. Instead, Plaintiff pleads, in excruciating detail, every application, inspection, notice, meeting and decision

12

reached in connection with her extensive, multi-million dollar building, landscaping and lighting plans. While such pleading details the stages of the approval process, it does nothing to show disparate treatment.

Plaintiff's allegations regarding her neighbor's lighting does not change the court's conclusion. While Plaintiff's Complaint makes reference to neighbors allowed more lumens in their lighting projects, she fails to show similarity and disparate treatment. Absent is any indication as to the similarity of the location or size of the neighbors' properties, or that the applications of such homeowners were accepted, rejected or in any way similar to Plaintiff's project. Nor do Plaintiff's allegations as to her gender, marital status, ethnicity or religious beliefs show any impermissible treatment. As stated above, Plaintiff's Complaint refers only to the acts of vandals at her home, and criminals in a neighboring town. Nothing connects such criminal activities to any Defendant named here.

In sum, Plaintiff's Complaint alleges only that it is expensive, time consuming and sometimes infuriating to deal with neighbors and the building and permitting process in an exclusive and highly regulated community. She has not alleged however, that any aspect of that process violated the Constitution. For that reason, she states no claim pursuant to Section 1983 and, to the extent that any such claim has not been abandoned, it is hereby dismissed.

## CONCLUSION

For the foregoing reasons, the court grants Defendants' motion to dismiss Plaintiff's complaint in its entirety. The Clerk of the Court is directed to terminate the motion appearing at

docket entry number 25 and to thereafter close the file in this matter.

SO ORDERED

/s/ Leonard D. Wexler
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Central Islip, New York
February 16, 2013